STATE *v.* ROELL *et al.*

(In Banc.  May 11, 1942.)

[7 So. (2d) 867.  No. 35070.]

874

Greek L. Rice, Attorney-General, by Jefferson Davis, Assistant Attorney-General, for appellant.

Heidelberg & Roberts, of Hattiesburg, for appellees.

880

**McGehee, J.,** delivered the opinion of the court.

This case is here on an interlocutory appeal to settle the controlling principles of law involved on the issue of whether or not the court below was correct in overruling the demurrer of the State of Mississippi to the bill of complaint filed by Mrs. Ida K. Roell and others to have confirmed and quieted, under Chap. 309, Laws of 1940, the title claimed by them as against the state and based upon a certain tax forfeited land patent issued prior to the passage of the said act. The demurrer challenges the constitutionality of this statute as being in violation of Subsection (u) of Section 90, and Sections 87, 95 and 100 of the State Constitution of 1890, the substance of which constitutional limitations will be hereinafter stated.

Section 1 of the act provides for the institution of a suit of this character against the state to obtain the relief herein sought. Section 2 requires that the state be represented by the attorney general in the defense of such a suit, and prescribes the procedure, etc., to be followed. Section 3 thereof, which is claimed to render the statute unconstitutional and void, makes it the duty of the court upon the hearing of such cases to validate and perfect the title in the complainant, unless the court shall find as a fact (1) that the state has not acquired title to the land by virtue of the tax sale; or (2) that the purchase price has not been paid; or (3) that actual fraud has been committed by the patentee, or his representative, in the procurement of the patent. The state contends that the foregoing requirement which makes it the mandatory duty of the court to confirm a title based upon a patent issued pursuant to a valid tax sale, unless the second or third of the above-mentioned grounds for not doing so are found to exist, has the effect of securing to the complainant in some instances a title which he would not otherwise be able to assert against the state for the reason

that he may have paid a grossly inadequate purchase price for the land, or where he should not be entitled to successfully claim the land against the state because of the fact that either the patentee or his representative may have stated something in the application to the State Land Commissioner as a representation of fact, which is untrue, amounting to a fraud at law, in violation of Section 5 of Chapter 174, Laws of 1936, which requires the applicant to furnish certain information in writing and under oath to the Land Commissioner in regard to the character, condition, value, etc., of the land as a condition precedent to the right to obtain the patent therefor; or because the patentee may have acquired the land in excess of the one-quarter section of state forfeited tax lands which one person is allowed to purchase in any year, and in violation of Section 14 of said Chapter 174, Laws of 1936, which contains a provision, brought forward from Section 6026, Code of 1930, to the effect that all lands acquired, directly or indirectly, by any person in contravention of that or any preceding section of the act shall escheat to the state, and all monies and fees paid therefor shall be forfeited; or that the patentee may have acquired the land as a corporation or nonresident alien contrary to Section 6027, Code of 1930, rendering such a patent void; or may have acquired the land through fraud, whether actual or constructive, in violation of Section 6028, Code of 1930, declaring that "all fraudulent purchases of public lands heretofore made are void . . ."

Since every reasonable doubt should be resolved in favor of the constitutionality of a statute, and the same should be construed, if reasonably possible, to avoid rendering it unconstitutional or seriously endangering its constitutionality, State v. Henry, 87 Miss. 125, 40 So. 152, 5 L. R. A. (N. S.) 340; Natchez & S. R. Co. v. Crawford, 99 Miss. 697, 55 So. 596; Board of Trustees of University of Mississippi v. Waugh, 105 Miss. 623, 62 So. 827, L. R. A.

1915D, 588, Ann. Cas. 1916E, 522, affirmed by Supreme
Court of United States, 237 U. S. 589, 35 S. Ct. 720, 59
L. Ed. 1131; Johnston v. Reeves & Co., 112 Miss. 227, 72
So. 925; Miller v. State, 130 Miss. 564, 94 So. 706; Money
v. Wood, 152 Miss. 17, 118 So. 357; State v. Gilmer
Grocery Co., 156 Miss. 99, 125 So. 710; Miller v. Sherrard,
157 Miss. 124, 126 So. 903; Chassanoil v. City of Green-
wood, 166 Miss. 848, 148 So. 781, affirmed by the Supreme
Court of the United States, 291 U. S. 584, 54 S. Ct. 541,
78 L. Ed. 1004; Tucker Printing Co. v. Board of Sup'rs
of Attala County, 171 Miss. 608, 158 So. 336; and in view
of the further rule that where a statute is capable of two
constructions, one of which would render it invalid and
the other valid, the construction which upholds its
validity must be adopted, State v. Wheatley, 113 Miss.
555, 74 So. 427; Miller v. State, 130 Miss. 564, 94 So. 706;
Robinson v. State, 143 Miss. 247, 108 So. 903, it becomes
necessary that we construe, if reasonably possible to do
so, the requirement of the statute which says that the
court shall validate and perfect a title based upon a patent
issued pursuant to a valid tax sale, unless the title to the
said land involved in the suit was divested out of the
State of Mississippi "without payment of purchase
price," to mean a purchase price not so grossly inad-
equate as to amount to a donation of the land from the
state to the patentee in contravention of the provision
of Section 95, Constitution of 1890, which prohibits the
donation, directly or indirectly, to individuals or to cor-
porations, of any of the lands belonging to, or under the
control of the state. It will be presumed that the legis-
lature was familiar with the former decisions of this court
thus announcing the law as to the effect of such a con-
sideration, and that it intended that the purchase price
referred to in the statute should be one that would con-
form to this constitutional requirement in conveyances
of a part of the public domain. We adopt this construc-
tion of the term "purchase price" as used in the statute

because we deem it a reasonable construction, and assume that the legislature did not intend to use the term in a sense such as would require the court to confirm a title based upon a patent issued for a purchase price so grossly inadequate as to amount to a donation of the land from the state in violation of the Constitution. And, applying the same rule of construction for determining the constitutionality of the act in question, we construe the further requirement that the court shall validate and perfect a title based upon a patent issued pursuant to a valid tax sale unless the patent was obtained by "actual fraud on the part of the patentee, or his representatives," (which presupposes of course that a purchase price not so grossly inadequate as to amount to a donation has been paid for the land) to mean such fraud in the procurement of the patent as the making of false statements to, or intentionally withholding important information from, the State Land Commissioner as to material facts in regard to which the applicant is required to make a disclosure under oath by Section 5, Chapter 174, Laws of 1936, and which false representations were either known to be false, or were made in reckless disregard of whether the same were true or false. Since representations of this character have always been construed by our decisions to constitute actual fraud, it is presumed that the legislature used the term "actual fraud" in the sense in which that term has been long understood in the legal jurisprudence of this state. Such a construction of this provision of the statute would not suspend the operation of any general law for the benefit of any individual, private corporation or association, in contravention of Section 87, Constitution of 1890. It leaves in full force and effect the general law announced in Section 6027, Code of 1930, which prohibits a corporation or non-resident aliens from becoming the owner of any public lands, and which declares every patent issued in contravention thereof shall be void; and it also leaves unimpaired Sec-

tion 14, Chapter 174, Laws of 1936, which declares in effect that all lands acquired, directly or indirectly, by any person in excess of one-quarter section of state forfeited tax lands in one year, shall escheat to the state. Nor does such construction affect Section 6028, Code of 1930. This is true for the reason that Chapter 309, Laws of 1940, now under consideration, does not evidence any intention on the part of the legislature to suspend the operation of either of these general laws, as contended for by the state, and for the further reason that in enacting this statute the legislature neither repealed nor modified Chapter 174, Laws of 1936, requiring an application for a land patent to be in writing and duly sworn to, furnishing certain information therein provided for, and it would be difficult to conceive that any of the public lands can be acquired by a corporation or a non-resident alien in violation of said Section 6027, or by any person by means of an application under oath for more than a one-quarter section of state forfeited tax lands in one year in violation of Chapter 174, Laws of 1936, without the purchaser being guilty of actual fraud within the meaning of Chapter 309, Laws of 1940.

Nor do we think that those provisions of Sections 87 and 90 of the Constitution of 1890 to the effect that no special or local law shall be enacted in the cases therein enumerated, are violated by Chapter 309, Laws of 1940, and the case of Hart v. Backstrom, 148 Miss. 13, 113 So. 898, fully sustains this view. Nor do we find anything announced to the contrary in the case of Winton v. Day, 96 Miss. 1, 49 So. 264.

The case of Hart v. Backstrom, supra, also sustains the position hereinbefore taken that the statute now under consideration does not violate Section 95, Constitution of 1890, which provides among other things that ''lands belonging to, or under the control of the state, shall never be donated directly or indirectly, to private corporations or individuals . . .'' Moreover, the question as to

whether lands have been obtained from the state through a patent without the payment of the purchase price within the meaning of that term as hereinbefore construed, and whether the patent has been obtained through fraud as hereinbefore defined are questions of fact which a patentee or those claiming through him are entitled to have judicially determined in order that it may be ascertained whether or not the patentee obtained a title by virtue of his purchase. Prior to the enactment of Chapter 309, Laws of 1940, there was no proceeding by which this question of fact could be judicially determined, in a suit instituted by the landowner against the state, and if the state did not file a suit to cancel such a patent, the landowner was without remedy to have the question of his ownership of the land determined. It is a procedural statute, under which the claimant of such land, in the event of his not being guilty of fraud or violation of any positive statute, can obtain a judicial determination of this fact; in other words, it provides a method by which the patentee or those claiming through him may get a judicial determination of the question as to whether or not there has been a donation of public lands, or whether the patent has been obtained under such circumstances as to cause the title to remain in or escheat to the state. The presumption is in favor of the existence and due performance of all the conditions upon which the validity of the patent depends. Bledsoe v. Doe ex dem. Little, 4 How. 13; Carter v. Spencer, 4 How. 42, 34 Am. Dec. 106; Surget et al. v. Doe ex dem. Little, 24 Miss. 118; Harris v. McKissack, 34 Miss. 464; Sweatt v. Corcoran, 37 Miss. 513; Edward Hines Yellow Pine Trustees et al. v. State ex rel. Moore, 133 Miss. 334, 97 So. 552; State ex rel. v. Knapp, Stout & Co., 136 Miss. 709, 101 So. 433; and Slay v. Lowery, 152 Miss. 356, 119 So. 819. If we are to indulge this presumption, then we cannot at the same time presuppose that the title of any land that may be involved in a suit to confirm and quiet title under the

statute in question has remained in or escheated to the state on account of anything that may have occurred in connection with the issuance of the patent. That is the issue to be determined by the court in such proceeding. If the confirmation of the title would result in a donation of the land for a grossly inadequate consideration to the complainant, or in ignoring the perpetration of such fraud against the state as would render the patent void, then we must assume that the court will refuse to grant such relief in either event as would violate Section 95 of the Constitution; that the state gave its consent to be sued for the primary benefit of purchasers in good faith, and the statute likewise gives fraudulent purchasers their day in court to be heard on the issue of fact involving their turpitude, but not for the purpose of condoning it, since it expressly provides that in such cases of ''fraud and failure to pay purchase price'' (meaning by purchase price, one not so grossly inadequate as to amount to a donation, as aforesaid) the court shall enter a decree forever annulling and cancelling the patent.

Finally, it is contended that the statute violates Section 100, Constitution of 1890, which provides that ''no obligation or liability of any person, association, or corporation held or owned by this state, . . . shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value . . .'' But, we are content to base our decision sustaining the constitutionality of the act on this ground upon the construction given this section of the Constitution by the court in the case of Adams, State Revenue Agent, v. Fragiacomo, 71 Miss. 417, 15 So. 798.

The final provision of Section 3, Chapter 309, Laws of 1940, provides that, ''no patent heretofore issued shall be cancelled in such proceeding because of loss of the

application papers to purchase said land, or because of errors or omissions or incorrect statements in said application . . . such matters not constituting fraud as above defined.'' We think that the ''errors or omissions or incorrect statements in said application'' should be construed to mean errors, omissions or incorrect statements not amounting to fraud, within the meaning of the statute, since the preceding portion of this section authorizes the court upon the hearing of such cases to refuse to validate or perfect the title in the complainant where actual fraud has been perpetrated upon the state in obtaining the patent, and directs the granting of affirmative relief to the state in such case, rather than to permit a donation of the land in violation of the Constitution.

Under the construction hereinbefore adopted, we are of the opinion that the act is constitutional and that the decree of the lower court should be affirmed and the cause remanded.

Affirmed and remanded.