PERKINS, et al. *v.* WHITE.

In Banc. Jan. 23, 1950.

No. 37323 (43 So. (2d) 897)

**Buchanan & Montgomery,** for appellant.

Howie, Howie & McGowan, and Broach & Ethridge, for appellee.

**Hall, J.**

On March 9, 1929, G. C. Leggett and wife were the owners of E½ of NE¼ of Section 31, Tp. 10 Range 8, in Wayne County, Mississippi, and gave a deed of trust thereon to Peoples Bank of Shubuta to secure an indebt-

edness of $780.00 evidenced by a promissory note due September 1, 1929. The oral testimony discloses that said bank was liquidated and said note and security became the property of First National Bank of Waynesboro, which last named bank subsequently failed and upon liquidation of its business by a receiver under authority of the United States District Court the assets finally remaining, including the note and deed of trust aforesaid, were sold in bulk to D. M. White on September 15, 1937; appellants' case is presented upon an assumption that these facts are correct, and, for the purpose of this decision, we accept them notwithstanding the fact that there was not offered in evidence any record of the failure of either bank nor any record or written evidence of the transfer from Peoples Bank to First National Bank nor any record or written evidence of the transfer from the Receiver of the last named bank to D. M. White.

Said land was duly assessed for taxes for the year 1930 and, default having been made in the payment thereof, the same was sold to the State on April 6, 1931, and upon failure to redeem therefrom the title matured in the State on April 6, 1933. The validity of the tax sale is not here in question.

In 1938 G. C. Leggett and wife executed four mineral deeds purporting to convey an aggregate of three-fourths of the oil, gas and other minerals in place under said lands, and the appellants claim to be the owners thereof.

Thereafterward on December 2, 1938, appellee, D. M. White, filed with the State Land Commissioner an application to purchase said land from the state, giving all the information required on the form furnished by the land office, showing Mrs. Leggett as owner at the time of the tax sale, showing First National Bank of Waynesboro as owner of a mortgage thereon at the time of the tax sale and showing D. M. White as the owner of said mortgage at the time of the application by virtue of an assignment thereof from the Receiver of said bank and

stating that the purchase of said land "is intended for my own use and benefit". On April 24, 1939, patent from the state was duly issued to D. M. White, and on October 25, 1943, the same was duly validated and confirmed against the State by decree of the chancery court.

On November 27, 1943, appellee filed the present suit seeking a cancellation of the claims of appellants to any mineral interests in said lands and after many delays in the hearing a final decree was entered on November 5, 1948, cancelling the several mineral deeds from Leggett and wife as clouds upon appellee's title, from which decree this appeal is prosecuted.

Appellants contend that there existed between appellee and the Leggetts a fiduciary relationship springing from the relation of mortgagor and mortgagee, that the purchase of an outstanding tax title amounted simply to a redemption of the lands from the tax sale, that such title as was acquired by White from the State inured to the benefit of the Leggetts and their vendees, and that the decree of the lower court is erroneous in failing to so adjudicate. The law is very clearly and succinctly stated in 37 Am. Jur., Mortgages, Section 1163, p. 416, as follows:     "The general rule is that a mortgagee may not, *as long as the relation of mortgagor and mortgagee exists,* obtain title to the property by means of a tax sale, as against the mortgagor, at least where the mortgagee has merely a lien on the mortgaged property and where he can, if he chooses, pay the taxes upon default of the mortgagor and add the amount so paid to his claim." (Emphasis supplied).

It will be noted from the above that the prohibition against acquisition of a tax title by the mortgagee is effective only so long as the relation of mortgagor and mortgagee exists between the parties, and the question at once presents itself as to when such relationship terminates. The note which was secured by the deed of trust in this case fell due on September 1, 1929. By Section 722

of the Mississippi Code of 1942 it became barred by limitation upon the expiration of six years thereafter, or on September 1, 1935.

Section 719 of the 1942 Code provides: ''When a mortgage or deed of trust shall be given on real or personal estate, or when a lien shall be given by law to secure the payment of a sum of money specified in any writing, an action or suit or other proceedings shall not be brought or had upon such lien, mortgage, or deed of trust to recover the sum of money so secured but within the time that may be allowed for the commencement of an action at law upon the writing in which the sum of money secured by such mortgage or deed of trust may be specified; and in all cases where the remedy at law to recover the debt shall be barred, the remedy in equity on the mortgage shall be barred.''

Section 743 of the 1942 Code provides: ''The completion of the period of limitation herein prescribed to bar any action, shall defeat and extinguish the right as well as the remedy . . .''.

██ Under these statutes the remedy on the deed of trust became not only barred but completely extinguished on September 1, 1935, and, in the absence of a renewal, or institution of foreclosure proceedings, the power of sale and all other rights conferred by the deed of trust were utterly destroyed on that date. Musser v. First National Bank of Corinth, 165 Miss. 873, 147 So. 783, and numerous authorities therein cited. See also McDaniel v. Short, 127 Miss. 520, 90 So. 186; and Gates v. Chandler, 174 Miss. 815, 165 So. 442. ██ We are, therefore, of the opinion that the relationship of mortgagor and mortgagee terminated on September 1, 1935, and that appellee's acquisition of a tax title in 1939 did not inure to the benefit of the mortgagors or their grantees for the reason that there then no longer existed any fiduciary relationship between them.

■ ■ Appellants weave into their argument two contentions which challenge the legality of the method whereby appellee obtained his patent from the state, one being that he obtained in excess of 160 acres of land from the State in 1939, contrary to Section 4108 of the 1942 Code, and the other being that he paid to the State an inadequate consideration for the 80 acres here in question. These are questions which can be raised only by the State, and as to this land appellee's title has been validated and confirmed against the State. Reliance Investment Co. v. Johnson, 188 Miss. 227, 193 So. 630, 194 So. 749.

The final contention of appellants grows out of this factual situation: On July 10, 1943, appellee conveyed the land in suit to his agent, R. E. Cooley, for more convenient handling in event of a sale of any portion of the mineral rights; On July 17, 1943, Cooley obtained a quitclaim deed from Leggett and wife; and on October 7, 1943, Cooley conveyed the property back to appellee. Appellants contend that under the doctrine of after acquired title they became vested with the several mineral interests which were attempted to be conveyed by the Leggetts in 1938, but this contention is interwoven with an assumption of the correctness of their first position hereinabove discussed coupled with the further assertion that appellee recognized the validity of title in the Leggetts when the quitclaim deed was obtained from them.

The doctrine upon which appellants rely is that ■ ■ when a person attempts to convey title to something that he did not in fact own, and he afterwards obtains a good title to the property or interest thus conveyed, such subsequent acquisition will automatically inure to the benefit of his prior vendees. That rule is supported by several decisions of this court as well as by legislative enactment, but it has no application to the facts here. If White had conveyed to the Leggetts, or either of them, the mineral deeds given by the Leggetts in 1938 would have immediately become validated and appellants would there-

by have been automatically vested with the interests purported to be conveyed by such mineral deeds, but such is not the situation here presented. ▮▮ The Leggetts had no title when they executed the mineral deeds nor did they afterward acquire any title. The title was validly vested in the State and later passed from the State to appellee; he thereby obtained a good title to the property and all minerals in place thereunder; when his agent obtained a quitclaim deed from the Leggetts after issuance of the patent by the State to appellee, he d d not thereby recognize title in the Leggetts and their prior vendees, but the whole effect of the quitclaim was that appellee acquired such title, if any, as may have been then vested in the Leggetts; since the Leggetts had no title when they executed the quitclaim, the appellee got nothing by virtue of this deed and is not estopped to rely upon the perfect title therefore acquired by him.

The decree of the Chancellor is therefore affirmed.
Affirmed.